EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.P., | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| vs. | ) **DEMAND** |
| UNITED STATES OF AMERICA; MICHAEL O'CONNOR, in his individual capacity; RAY GARCIA, in his individual capacity. | ) |
| Defendants. | ) |

## INTRODUCTION

1. S.P. served two sentences in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for two and a half years total.

2. While housed at FCI Dublin, S.P. faced constant sexual harassment, culminating in multiple instances of sexual abuse and long-lasting traumatization.

## JURISDICTION AND VENUE

3. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

4. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff S.P. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

7. Plaintiff S.P. was at all times relevant hereto incarcerated in FCI Dublin.

8. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin is a federal female low-security correctional institution.

9. Defendant Michael O'Connor was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

10. Defendant Ray Garcia was the Warden and PREA Coordinator during the time of this abuse. He is sued in his individual capacity.

11. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff S.P. Plaintiff S.P. was dependent upon Defendant United States for her personal security and necessities.

12. In performing the acts and/or omissions contained herein, Defendants O'Connor and Garcia acted under color of federal law, and Plaintiff S.P. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate

indifference to the rights and personal security of Plaintiff S.P. Each knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff S.P. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendants United States, O'Connor, and Garcia failed to take steps to protect Plaintiff S.P. and to ensure her rights to safety from sexual abuse.

## FACTS

13. Plaintiff S.P. was incarcerated twice at FCI Dublin, once in 2015-2016 and a second time from 2017-2018.

14. In 2015 and 2016, Plaintiff S.P. worked in the kitchen warehouse.

15. The warehouse was supervised by Officer O'Connor.

16. During the time she worked in the kitchen warehouse, Defendant O'Connor made sexually explicit comments about her body and her breasts.

17. This caused Plaintiff S.P. extreme trauma due to her history of both childhood and adult sexual abuse.

18. In October 2016, , when Plaintiff S.P. came out of the warehouse and tried to put on her smock, he made a several crude and unwelcome comments about her breasts.

19. Later that day, O'Connor made a crude and unwelcome comment about the size of Plaintiff S.P's buttocks.

20. Several days later, Defendant O'Connor rubbed her breasts with his forearm.

21. Plaintiff S.P. also heard Defendant O'Connor making other sexually explicit comments about the other prisoners' bodies.

22. Plaintiff S.P. was advised by another prisoner to report Defendant O'Connor's misconduct to Defendant Garcia.

23. The same day it happened, Plaintiff S.P. reported Defendant O'Connor's misconduct to Defendant Garcia in-person during lunch.

24. Defendant Garcia ignored her complaint and told her to talk to Lieutenant Stephen Putnam.

25. Plaintiff S.P. then reported Defendant O'Connor's misconduct to Lt. Putnam.

26. Lt. Putnam offered S.P. no victim resources and did not protect her from Defendant O'Connor. Instead, he told her that she had two options, she could quit her job or go to the SHU and be transferred to another prison, which she feared could have delayed her release. He reminded her that she was close to her release date and ordered her to choose which outcome she preferred.

27. On information and belief, Lt. Putnam failed to conduct any investigation or report Defendant O'Connor for violating the Prison Rape Elimination Act.

28. Plaintiff S.P. decided to quit her job to avoid further sexual abuse and to avoid being placed in the SHU for reporting Defendant O'Connor's misconduct.

29. She was devastated because that was the only money she had to go home with.

30. When Plaintiff S.P. returned to FCI Dublin at the end of December 2017, she was in the dining hall for breakfast and noticed that the milk that had been given her was soured.

31. She went back in line, reported that her milk was soured, and received a new milk.

32. When Plaintiff S.P. walked back down to the table, Defendant O'Connor called her over and said "You can either return the milk you just stole or I'll write you a 300 series shot."

33. Plaintiff S.P. had followed proper protocol and stated that the milk was clearly on her tray and she had not stolen anything.

34. Although she had done nothing wrong, Plaintiff S.P. received the shot which showed up on her disciplinary record, impacting her release.

35. Following that encounter, Plaintiff S.P. ate only in her room unless she had another prisoner to accompany her to the kitchen.

36. Plaintiff S.P. did this until she was released.

37. When Plaintiff S.P. was released, she asked if any PREA report had been created when she reported Defendant O'Connor and she asked whether she could have a copy. No one confirmed for her that Lt. Putnam made a PREA report for her, and she was told that the only thing that she could have was her medical records.

38. When she was in the halfway house, she reported the abuse to a counselor, but the counselor said that there was nothing they could do.

39. She was released from halfway-house the second time February 20, 2019.

40. She was on supervised release until February 20, 2022.

41. After reporting the abuse to three people and having each of them decline to assist her, she did not think that anyone would believe her or take her seriously. However, when she saw in April of 2024 that FCI Dublin was closing and heard the reasons why, Plaintiff S.P. felt safe enough to come forward.

## EXHAUSTION

42. On July 15, 2024, Plaintiff S.P., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

43. Plaintiff has not received a response from the BOP.

## EQUITABLE TOLLING

44. Plaintiff S.P. is entitled to equitable tolling for her FTCA Claim.

45. The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

46. Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

47. Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See* e.g., *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue claim)).

48. Plaintiff S.P. clearly faced extraordinary circumstances, preventing the timely filing of her FTCA claim.

49. Because Plaintiff S.P. remained incarcerated within the BOP until February 2022, she continued to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims. As long as she remained under BOP custody and control, the threats, coercion, and fear of retaliation continued to silence her.

50. A court-appointed Special Master confirmed that during the time of Plaintiff S.P.'s incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place, " and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions which extended their incarceration.[1]

51. Plaintiff S.P. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety.

52. Plaintiff S.P. has further demonstrated that she faced extraordinary circumstances preventing her from filing within the ordinary FTCA statutory period.

53. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff S.P.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

54. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

---

[1] Lisa Fernandez, FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, Special Master Issues 1st Report on FCI Dublin Sex Assault, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge

55. Plaintiff S.P. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees O'Connor and Garcia.

56. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

57. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

58. Their positions as correctional officers and a PREA coordinator were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

59. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

60. Defendant O'Connor discriminated against Plaintiff S.P. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

61. By these acts, Defendant O'Connor caused Plaintiff S.P. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant O'Connor)**
**(FTCA; Cal. Civ. Code § 52.4)**

62. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

63. Plaintiff S.P. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendant O'Connor.

64. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

65. Their positions as correctional officers and a PREA coordinator were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

66. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

67. Plaintiff has a nonfrivolous argument that Defendant O'Connor bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

68. Defendant O'Connor discriminated against Plaintiff S.P. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

69. By these acts, Defendant O'Connor caused Plaintiff S.P. physical, mental, and emotional injuries as well as injury to her personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

70. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff S.P. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California common law against the United States based on the conduct of its employees O'Connor and Garcia.

72. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

73. Their positions as correctional officers and a PREA coordinator were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

74. Defendant O'Connor violated Plaintiff S.P.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

75. Defendant O'Connor's sexual abuse of Plaintiff S.P. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

76. Defendant O'Connor subjected Plaintiff S.P. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff S.P.'s person.

77. By intentionally subjecting Plaintiff S.P. to sexual acts, Defendant O'Connor acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

78. By repeatedly subjecting Plaintiff S.P. to sexual acts, Defendant O'Connor caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant O'Connor)**
**(California Common Law)**

79. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

80. Plaintiff S.P. brings this claim for sexual assault under California common law against Defendant O'Connor.

81. Defendant O'Connor violated Plaintiff S.P.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

82. Defendant O'Connor's sexual abuse of Plaintiff S.P. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

83. Defendant O'Connor subjected Plaintiff S.P. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff S.P.'s person.

84. By intentionally subjecting Plaintiff S.P. to sexual acts, Defendant O'Connor acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

85. By repeatedly subjecting Plaintiff S.P. to sexual acts, Defendant O'Connor caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

86. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

87. Plaintiff S.P. brings this claim for battery under the Federal Tort Claims Act based on California civil code section 1708.5against the United States for the conduct of its employees Defendant O'Connor and Garcia.

88. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

89. Their positions as correctional officers and a PREA coordinator were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

90. Defendant O'Connor committed battery against Plaintiff S.P. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

91. The sexual abuse of Plaintiff S.P., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

92. Defendant O'Connor subjected Plaintiff S.P. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff S.P.'s person.

### SIXTH CLAIM FOR RELIEF
### BATTERY
### (against Defendant O'Connor)
### (California Common Law)

93. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

94. Plaintiff S.P. brings this claim for battery under California civil code section 1708.5 against Defendant O'Connor.

95. Defendant O'Connor committed battery against Plaintiff S.P. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

96. The sexual abuse of Plaintiff S.P., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

97. Defendant O'Connor subjected Plaintiff S.P. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff S.P.'s person.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

98. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

99. Plaintiff S.P. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees O'Connor and Garcia.

100. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

101. Their positions as correctional officers and a PREA coordinator were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

102. Defendant O'Connor engaged in outrageous conduct by repeatedly subjecting Plaintiff S.P. to sexual acts while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff S.P. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

103. Defendant O'Connor's sexual abuse caused Plaintiff S.P. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

104. Defendant O'Connor intended to cause Plaintiff S.P. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

**EIGHTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant O'Connor)**
**(California Common Law)**

105. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

106. Plaintiff S.P. brings this claim for the intentional infliction of emotional distress against Defendant O'Connor.

107. Defendant O'Connor engaged in outrageous conduct by repeatedly subjecting Plaintiff S.P. to sexual acts while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff S.P. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

108. Defendant O'Connor's sexual abuse caused Plaintiff S.P. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

109. Defendant O'Connor intended to cause Plaintiff S.P. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

**NINTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

110. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

111. Plaintiff S.P. was in the custody and control of the United States during all relevant times.

112. Defendants O'Connor and Garcia violated Plaintiff S.P.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

113. Defendant United States, by the actions of its employees O'Connor and Garcia, interfered with Plaintiff S.P.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the

imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse, and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

114. As a proximate result of these acts, Plaintiff S.P. sustained damage and injury.

### TENTH CLAIM FOR RELIEF
### TRAFFICKING VICTIMS PROTECTION ACT
### (against all Defendants)
### (18 U.S.C. § 1581, *et seq.*)

115. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

116. Defendant O'Connor knowingly recruited, enticed, and solicited Plaintiff S.P. by offering benefits and things of value, such as not being placed in the SHU or transferred to another prison, for engaging in sex acts.

117. Defendant O'Connor made Plaintiff S.P. engage in sex acts through force and coercion.

118. Defendant Garcia knew of, or should have reasonably known, that Defendant O'Connor was soliciting Plaintiff S.P. in exchange for sex acts, and benefited by failing to protect Plaintiff S.P.

119. This conduct has caused Plaintiff S.P. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

### ELEVENTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.5)

120. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

121. Defendant O'Connor knowingly recruited, enticed, and solicited Plaintiff S.P. by offering benefits and things of value, such as not receiving a shot, for engaging in sex acts.

122. Defendant O'Connor made Plaintiff S.P. engage in sex acts through force and coercion.

123. Defendant Garcia knew or should have known that Defendant O'Connor was engaged in these activities and intentionally placed Plaintiff S.P. at greater risk of harm and/or failed to act in a manner that protected Plaintiff S.P. from harm.

124. Defendant United States employed Defendants O'Connor and Garcia, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

125. This conduct has caused Plaintiff S.P. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## TWELFTH CLAIM FOR RELIEF
## CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Defendants O'Connor and Garcia)
### (Cal. Civ. Code § 52.5)

126. Plaintiff S.P. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

127. Defendant O'Connor knowingly recruited, enticed, and solicited Plaintiff S.P. by offering benefits and things of value, such as not receiving a shot, for engaging in sex acts.

128. Defendant O'Connor made Plaintiff S.P. engage in sex acts through force and coercion.

129. Defendant Garcia knew or should have known that Defendant O'Connor was engaged in these activities and intentionally placed Plaintiff S.P. in greater risk of harm and/or failed to act in a manner that protected Plaintiff S.P. from harm.

130. This conduct has caused Plaintiff S.P. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## PRAYER FOR RELIEF

131. Plaintiff S.P. prays for judgment against Defendant, and each of them, as follows:

   (a) An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff S.P. in an amount to be determined at trial;

   (b) An award to Plaintiff S.P. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c) For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff S.P. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 21, 2025

        SIEGEL, YEE, BRUNNER & MEHTA

        By:_____
          EmilyRose Johns

        THE LAW OFFICE OF DEBORAH M. GOLDEN

        By: */s/ Deborah M. Golden*
          Deborah M. Golden

        DC Bar # 470-578
        Motion for *pro hac vice* forthcoming

        *Attorneys for Plaintiff*